No. 22-11621-JJ

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

THADDAEUS MYRICK, NICHOLAS BRADEN,
JESSIE POPEE, and KENNETH L. FOUNTAIN,

*Plaintiffs / Appellees*

**v.**

CITY OF HOOVER, ALABAMA,

*Defendant / Appellant*

On Appeal from the United States District Court for the
Northern District of Alabama, No. 2:19-cv-01728-MHH

# Brief of Appellant City of Hoover, Alabama

Michael L. Jackson
Cecil H. Macoy Jr.
Wallace Jordan Ratliff & Brandt, LLC
800 Shades Creek Pkwy., Suite 400
Birmingham, Alabama  35209
(205) 870-0555
mjackson@wallacejordan.com
cmacoy@wallacejordan.com

Attorneys for Appellant City of Hoover, Alabama

*City of Hoover, Ala. v. Myrick et al.,*
*Appeal No. 22-11621-JJ*

## <u>Certificate of Interested Persons and Corporate Disclosure Statement</u>

Appellant City of Hoover certifies that the following judges, lawyers, persons, and entities are or were involved in or have an interest in the outcome of this case or appeal:

1. Braden, Nicholas D. (Plaintiff-Appellee);

2. Fountain, Kenneth L. (Plaintiff-Appellee);

3. Haikala, Madeline H. (District Judge);

4. Hoover, Alabama (municipality) (Defendant-Appellee);

5. Jackson, Michael L., (counsel for Defendant-Appellant);

6. Macoy, Cecil H., Jr. (counsel for Defendant-Appellant);

7. Melton Espy & Williams, P.C. (counsel for Plaintiffs-Appellees);

8. Mozingo, J. Flynn (counsel for Plaintiffs-Appellees);

9. Myrick, Thaddaeus (Plaintiff-Appellee);

10. Popee, Jessie (Plaintiff-Appellee); and

11. Wallace Jordan Ratliff & Brandt, LLC (counsel for Defendant-Appellant)

No publicly traded corporation has an interest in the outcome of the case or appeal.

Respectfully submitted.

  s/ *Michael L. Jackson*
Michael L. Jackson
Attorney for Appellant
City of Hoover, Alabama

C-1

*City of Hoover, Ala. v. Myrick et al.,*
*Appeal No. 22-11621-JJ*

Of Counsel:

Wallace Jordan Ratliff & Brandt, LLC
800 Shades Creek Pkwy., Suite 400
Birmingham, Alabama  35209
(205) 874-0315
mjackson@wallacejordan.com

## <u>Statement Regarding Oral Argument</u>

Appellant City of Hoover believes oral argument would be helpful to an expeditious and careful resolution of this controversy. Hoover believes oral argument would help ensure that the Court fully comprehends the facts, the issues, and how the two forms of leave being compared work in practice. No similar claim for benefits under 38 U.S.C. § 4316(b)(1)(B) has been adjudicated previously by this Court, at least not in any reported decision, so this is a case of first impression in the Eleventh Circuit. The issue raised by the Plaintiffs here is not limited to them but could affect many more employees of Hoover and potentially other municipal and governmental employees whose employers have paid administrative leave for investigations. Hoover therefore requests oral argument.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement ........ C-1

Statement Regarding Oral Argument ............................................................... i

Table of Citations ....................................................................................... iv

Statement of Subject-Matter and Appellate Jurisdiction ............................... vii

Statement of the Issue .................................................................................. 1

Statement of the Case.................................................................................. 2

   I.   Course of Proceedings and Disposition Below...................................... 2

  II.   Statement of Facts ................................................................................ 6

        A.  Hoover employees receive pay for certain holidays and accrue three types of paid leave when they are on paid status but not when on unpaid status or "leave without pay." ............................... 6

        B.  Hoover employees who take military leave receive up to 168 hours of paid military leave and may also use other forms of paid leave, but an employee on military leave does not otherwise receive pay and, when unpaid, does not receive holiday pay or accrue leave hours. .................................................. 9

        C.  The Plaintiffs are or were Hoover police officers who served in the military, took both paid and long-term unpaid military leaves, and when on unpaid military leave were not paid for holidays and did not accrue leave hours. ...................................... 10

        D.  Hoover provides "paid administrative leave" for many reasons, including for investigations involving an employee, but it is rarely a long-term leave, especially compared to military leave. .............................................................................. 13

  III. Standard of Review......................................................................... 16

Summary of the Argument ........................................................................ 17

Argument ................................................................................. 21

I.  Unpaid military leave is not comparable to paid administrative
    leave because the statutory language of USERRA only requires
    employers to provide the same benefits to employees on leave with
    similar "status" and "pay." ............................................................. 21

II. Unpaid military leave is not comparable to paid administrative
    leave under the regulatory guidance of the Department of Labor ......... 27

    A. Paid administrative leave and unpaid military leave are not
       comparable as to duration of the leaves. ....................................... 29

    B. Paid administrative leave and unpaid military leave are not
       comparable as to purpose of the leave. ......................................... 36

    C. Paid administrative leave and unpaid military leave are only
       somewhat comparable as to ability to choose when to take
       leave, and other factors also show that these leaves are not
       comparable. ............................................................................. 44

Conclusion ................................................................................. 47

Certificate of Compliance ............................................................. 48

Statement Regarding Service ......................................................... 48

iii

# Table of Citations

**Cases**                                                                                                **Page(s)**

*Ali v. Trump*,
  959 F.3d 364 (D.C. Cir. 2020) .................................................................. 35

*Barnhart v. Sigmon Coal Co.*,
  534 U.S. 438 (2002) ................................................................................. 24

*Campbell v. Shinseki*,
  546 F. App'x 874 (11th Cir. 2013) .......................................................... 3

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
  467 U.S. 837 (1984) ................................................................................. 23

*Clarkson v. Alaska Airlines, Inc.*,
  No. 2:19-CV-0005-TOR,
  2021 WL 2080199 (E.D. Wash. May 24, 2021) .............. 3, 29, 33, 37, 39, 45

*Connecticut Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) ................................................................................. 24

*Elliott v. City of Anaheim*,
  No. SACV 12-00736-CJC(MLGx),
  2015 WL 13918896 (C.D. Cal. July 21, 2015) ......... 17, 18, 24, 25, 26, 37, 41

*Felts v. Wells Fargo Bank, N.A.*,
  893 F.3d 1305 (11th Cir. 2018) ........................................................... 16, 17

*Hoefert v. American Airlines, Inc.*,
  438 F. Supp. 3d 724 (N.D. Tex. 2020) ................................... 28, 32, 37, 40

*Huntsman v. Southwest Airlines Co.*,
  No. 19-CV-00083-PJH,
  2021 WL 391300 (N.D. Cal. Feb. 3, 2021) .......................................... 29, 45

*Menuel v. City of Atlanta*,
  25 F.3d 990 (11th Cir. 1994) ................................................................. 17

*Moss v. United Airlines, Inc.*,
  420 F. Supp. 3d 768 (N.D. Ill. 2019) .................................................... 37

iv

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
    551 U.S. 644 (2007) ................................................................ 23

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) ...........................................................22, 24

*Rogers v. City of San Antonio*,
    392 F.3d 758 (5th Cir. 2004) ................................................. 44

*Rubin v. United States,*
    449 U.S. 424 (1981) ............................................................... 24

*Smith v. Owens*,
    848 F.3d 975 (11th Cir. 2017)................................................ 16

*Synoracki v. Alaska Airlines, Inc.*,
    No. C18-1784RSL,
    2022 WL 1746777 (W.D. Wash. May 31, 2022) ................................37, 39

*Travers v. Federal Express Corp.*,
    8 F.4th 198 (3d Cir. 2021) ...................................................... 4

*Tully v. Dep't of Justice,*
    481 F.3d 1367 (Fed. Cir. 2007)..........................................32, 37

*United States v. Ron Pair Enterprises, Inc.,*
    489 U.S. 235 (1989) ............................................................... 24

*Walker v. Jefferson Cnty. Bd. of Educ.,*
    771 F.3d 748 (11th Cir. 2014)................................................ 24

*Waltermyer v. Aluminum Co. of Am.*,
    804 F.2d 821 (3rd Cir. 1986) ................................................. 29

*Weaver v. Madison City Bd. of Educ.*,
    947 F. Supp. 2d 1308 (N.D. Ala. 2013).................................... vii

*White v. United Airlines, Inc.*,
    987 F.3d 616 (7th Cir. 2021) ................................................... 4

## Statutes and Constitutional Provisions

28 U.S.C. § 1291 ........................................................................ vi

38 U.S.C. § 4303(13) ................................................................. 44

38 U.S.C. § 4316(b)(1) ................................................... 21, 22, 47

*38 U.S.C. § 4316(b)(1)(B) ................................ i, 17, 22, 23, 26, 27

38 U.S.C. § 4323(b)(3) ................................................................ vii

38 U.S.C. § 4323(i) ..................................................................... vii

Ala. Code § 11-43-230(a) ........................................................... 42

Ala. Code § 31-12-2(a) ................................................................. 2

Ala. Code § 31-2-13(a) .................................................................. 9

Authorization for Use of Military Force,
    Pub. L. No. 107-40, 115 Stat. 224 (2001) ................................ 35

## Regulations

20 C.F.R. § 1002.150 ............................................................. 27, 47

*20 C.F.R. § 1002.150(b) ........................... 18, 26, 28, 29, 34, 36, 45

20 C.F.R. § 1002.150(c) .......................................................... 27, 28

Uniformed Services Employment and Reemployment Rights Act
    of 1994; Final Rules, 70 Fed. Reg. 75,246 (Dec. 19, 2005) .............. 23, 28, 29

## Statement of Subject-Matter and Appellate Jurisdiction

The Plaintiffs' claims fall under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) (Doc. 1), and 38 U.S.C. § 4323(b)(3) provides jurisdiction to federal district courts for USERRA claims: "In the case of an action against a private employer by a person, the district courts of the United States shall have jurisdiction of the action." A "political subdivision" of a state, like the City of Hoover, is a "private employer" as defined by USERRA under 38 U.S.C. § 4323(i). So the district court had subject-matter jurisdiction. *See Weaver v. Madison City Bd. of Educ.*, 947 F. Supp. 2d 1308, 1309 (N.D. Ala. 2013), *report and recommendation adopted,* No. 5:11-CV-3558-TMP, 2013 WL 4433799 (N.D. Ala. Aug. 14, 2013), *aff'd sub nom. Walker v. Jefferson Cnty. Bd. of Educ.*, 771 F.3d 748 (11th Cir. 2014).

This Court has jurisdiction to decide this appeal under 28 U.S.C. § 1291. The district court entered a final judgment disposing of all parties' claims on April 21, 2022. (Doc. 38.) Hoover filed its notice of appeal on May 11, 2022, which was within 30 days after the entry of the final judgment. (Doc. 39.) This appeal was therefore timely filed under Fed. R. App. P. 4(a)(1)(A), and this Court has jurisdiction over this appeal.

## Statement of the Issue

USERRA requires an employer to treat employees on military leave no worse than employees on any other form of leave that is comparable to the military leave in connection with non-seniority benefits. Hoover can put an employee on paid administrative leave for many reasons, including when an employee is involved in an investigation. An employee on paid administrative leave, unlike an employee on long-term unpaid military leave, is paid for holidays and accrues sick-leave time, personal-leave time, and annual-leave (vacation) time. Hoover has put an employee on paid administrative leave for more than 120 days only three times since 1997, while long-term military leaves are much more common. Is unpaid long-term military leave comparable to paid administrative leave or, alternatively, long-term paid administrative leave for an investigation?[1]

---

[1] The Plaintiffs/Appellees framed the issue similarly in their trial-court reply brief supporting their motion for summary judgment: "Whether administrative leave pending an investigation for City of Hoover law enforcement officers is comparable to military leave is the issue underlying the Plaintiff law enforcement officers' Motion for Summary Judgment on their USERRA claims and the City of Hoover's opposition thereto." (Doc. 22 at 1.)

## Statement of the Case

### I.  Course of Proceedings and Disposition Below

Plaintiffs Thaddaeus Myrick, Nicholas Braden, Jessie Popee, and Kenneth L. Fountain sued the City of Hoover, Alabama, claiming that Hoover's policy and practice of not paying employees on unpaid military leave for holidays and not providing accrual of sick-leave time, personal-leave time, and annual-leave (vacation) time violated the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA) and Ala. Code § 31-12-2(a), which simply requires compliance with USERRA while on state active duty. (Doc. 1.)

Each party filed a motion for summary judgment and supporting brief. (Docs. 14, 15, 16, and 17.) The parties filed a joint evidentiary submission, and Hoover filed another declaration of Hoover's Human Resources Director, Mike Lewis. (Docs. 13, 13-1 through 13-16, and 16-1.)

Each party filed a response to the other's motion for summary judgment. (Docs. 18 & 20.) Hoover submitted a second declaration of Hoover's Human Resources Director, Mike Lewis. (Docs. 18 & 18-1.) The Plaintiffs submitted four new exhibits: a declaration of Plaintiff Kenneth Fountain; an email from counsel for Hoover; excerpts from Fountain's military file; and a purported 1999 news article. (Docs. 19 and 19-1 through 19-4.) Hoover moved to strike

the purported news article and parts of Fountain's declaration. (Doc. 23.) The Plaintiffs responded to the motion to strike. (Doc. 25.) The district court denied the motion as moot, saying that the substance of the objection in the motion to strike would be considered in the ruling on the motions for summary judgment and that motions to strike summary-judgment evidence are no longer appropriate under *Campbell v. Shinseki*, 546 F. App'x 874, 879 (11th Cir. 2013). (Doc. 27.) In its decision ruling on the motions for summary judgment, the district court overruled the objections to Fountain's declaration but declined to consider the purported news article. (Doc. 34 at 8–9,[2] n.3.) The parties also filed reply briefs in support of their motions for summary judgment. (Docs. 22 & 24.)

About six months after the reply briefs were filed, Hoover filed a notice of supplemental authority discussing *Clarkson v. Alaska Airlines, Inc.*, No. 2:19-CV-0005-TOR, 2021 WL 2080199 (E.D. Wash. May 24, 2021), a case released about five months after the summary-judgment reply briefs. (Doc. 28.) The Plaintiffs responded. (Doc. 29.) In January 2022, about 13 months after the summary-judgment reply briefs were filed, the Plaintiffs filed a motion for oral argument on the motions for summary judgment saying they wanted to

---

[2] Page numbers in record citations are to the CM/ECF system-generated page numbers at the top of the page unless otherwise specified.

address recent judicial decisions released since the filing of the dispositive motions. (Doc. 30.) After a videoconference hearing in early February 2022 (Doc. 31), the district court allowed Hoover to respond in writing to two cases mentioned for the first time in oral argument by the Plaintiffs: *Travers v. Federal Express Corp.*, 8 F.4th 198 (3d Cir. 2021), and *White v. United Airlines, Inc.*, 987 F.3d 616 (7th Cir. 2021). (Doc. 32.) Hoover then filed a response addressing those cases. (Doc. 33.)

About a month after Hoover's response, the district court issued a memorandum opinion and order ruling in favor of the Plaintiffs on the motions for summary judgment (that is, granting the Plaintiffs' motion and denying Hoover's motion). (Doc. 34.) That order found that Hoover was liable to the Plaintiffs on their USERRA claims and directed the parties to advise the court if they would be able to stipulate to the terms of a final judgment. The parties understood the court's question as asking if the parties could agree, given the ruling on liability, what the damages or other remedies should be. (Doc. 34.)

The parties filed a joint stipulation in which Hoover expressly reserved the right to appeal the court's decision on liability but otherwise agreed to the amounts and terms of damages and equitable relief for the final judgment given the district court's ruling on liability. (Doc. 37.) The parties agreed on the

number of hours for each Plaintiff as to holiday pay, personal leave, sick leave, and annual leave. (Doc. 37.) The parties agreed that because Plaintiff Myrick was no longer employed by Hoover, his would be paid out at an agreed-upon hourly rate for his holiday hours, personal-leave hours, annual-leave hours, and half of his sick-leave hours, with only half of the sick leave being paid in accordance with Hoover policy on paying unused sick leave to departing employees. As to Plaintiffs Braden, Popee, and Fountain, the parties agreed that under the court's liability ruling, they would be due to be paid their personal-leave hours and holiday hours, would be due to have their sick leave credited to their sick-leave bank, and would each have the option to either have their annual leave credited to their annual-leave bank or paid out at a specified hourly rate. (Doc. 37.) The parties also stipulated to the amount of reasonable attorneys' fees and costs for the Plaintiffs. (Doc. 37.)

The court entered a final judgment in accordance with the parties' stipulation. (Doc. 38.) The final judgment awarded $92,212.93 in attorney's fees and costs; awarded $63,968.18 in combined payments to the four Plaintiffs; awarded the three employee Plaintiffs the option to be paid or bank annual leave with a total combined value of $61,497.80 if all paid out; and awarded the three employee Plaintiffs banked sick leave with a current

approximate value of $32,017.35.[3] (Doc. 38.) So the total value of the judgment, including attorney's fees and costs, is about $249,696.26. (Doc. 38.) Hoover filed its notice of appeal within 30 days after the entry of the final judgment. (Doc. 39.)

## II. Statement of Facts

### A. Hoover employees receive pay for certain holidays and accrue three types of paid leave when they are on paid status but not when on unpaid status or "leave without pay."

The City of Hoover has three types of leave that its employees may accrue:  (a) *sick leave* (which may be used if an employee is sick or injured in non-work-related activity, for medical appointments, or to care for an injured or sick immediate family member); (b) *annual leave* (which is "primarily for vacation purposes" but can be used for most any personal reason); and (c) *personal leave* (which is required to be used for the reasons provided for sick leave before using sick leave, and may also be used at the employee's

---

[3] The value of the banked leave is not subject to precise valuation. For sick leave, when an employee retires, the employee can apply all unused sick leave to retirement or get paid for half of the banked leave, and a departing but not retiring employee can get paid for half of the banked sick leave up to a maximum of 320 hours. Payout of banked annual leave to a departing employee is capped at 820 hours. Also, banked leave, whether sick or annual, is paid out at the pay rate when it is used, not the time it is earned. So if an employee is awarded banked leave now, then gets a raise, then uses the leave, the leave will be paid at the raised pay level. The values here assume all leave is used or paid out at the current rate of pay.

discretion like annual leave). (Doc. 13-5 at 33 (Lewis Dep. at 32:11–20); Doc. 13-6 at 3–8; Doc. 16-1 at 2–3, ¶ 3.)

Annual leave and sick leave are accrued by an employee every pay period when the employee is on paid status any time during the pay period, unless three pay periods end in the same month (which typically occurs twice per year or 2 out of 26 pay periods annually) there are no leave accruals for the third pay period ending that month. Pay periods are two-week periods that begin on a Sunday and end on the second Saturday after the beginning Sunday. Paid status means the employee is paid during the pay period for actual work or for any paid leave (for example, use of annual leave, sick leave, personal leave, paid jury duty, paid military leave, paid administrative leave, and compensatory time in lieu of overtime). The amount of annual leave accrued each pay period is between 3 hours (or 6 hours per month) and 8 hours (or 16 hours per month), depending on the employee's years of service.[4] The amount of sick leave accrued is 3 hours per pay period (or 6 hours per month) without regard to years of service. An employee accrues 24 hours of personal leave per year. Personal leave is not accrued per pay period but is a one-time annual accrual on the employee's hire-date anniversary. Hoover's policy manual states

---

[4] This policy and other policies are different for fire-department personnel, but the Plaintiffs here are or were police officers. Because the exceptions for fire-department personnel are not relevant here, those will not be mentioned.

that if an employee is in non-paid status for more than 30 days during the year, the amount of personal leave awarded is prorated based on the number of hours worked during that year. (Doc. 13-5 at 44–46, 49, 52, 67, 88, 98, 100, 108–110 (Lewis Dep. at 43:1–4, 44:22 to 45:3, 45:12–14, 48:19–23, 51:20–23, 66:7–18, 87:2–5, 97:20–23, 99:6–16, 107:13 to 108:5, 108:11 to 109:18); Doc. 16-1 at 3–5, ¶¶ 5, 8; Doc. 13-6 at 3–5.)

An employee on unpaid status for the entire pay period does not accrue annual leave and sick leave for that pay period. Hoover's policy manual says, "Employees in non-pay status are not eligible to accrue annual leave," and "Full-time employees in temporary or non-pay status are not eligible to accrue sick leave." (Doc. 13-6 at 3–5; Doc. 13-5 at 57, 79, 83 & 110 (Lewis Dep. at 56:1–9, 78:13–18, 82:14–18, 109:19–23); Doc. 16-1 at 4, ¶ 6.)

Full-time employees of Hoover receive 12 paid holidays per year, and each holiday is equal to 8 hours of pay. An employee receives holiday pay for a paid holiday if the employee is in paid status immediately before or after the holiday. An employee on unpaid leave immediately before and immediately after the holiday does not receive holiday pay for holidays during the employee's unpaid leave. (Doc. 13-5 at 39, 71 (Lewis Dep. at 38:3–19, 70:5–10); Doc. 16-1 at 3, ¶ 4; Doc. 13-6 at 2.)

8

**B. Hoover employees who take military leave receive up to 168 hours of paid military leave and may also use other forms of paid leave, but an employee on military leave does not otherwise receive pay and, when unpaid, does not receive holiday pay or accrue leave hours.**

Hoover employees on military leave for qualified service in the military are paid their regular compensation by Hoover for up to 168 hours (or 21 eight-hour days) per calendar year. When on *paid* military leave, an employee accrues annual and sick leave and is paid for any paid holidays. (Doc. 13-5 at 85 (Lewis Dep. at 84:8–19); Doc. 13-6 at 14; Doc. 16-1 at 5, ¶ 10; Ala. Code § 31-2-13(a).)

Once an employee on military leave exhausts or otherwise is not using the annual 168 hours of paid military leave and is also not using any other form of paid leave (for example annual leave, personal leave, or compensatory time off in lieu of overtime) but is classified as on "leave without pay" for a full pay period, the employee does not accrue any annual or sick leave. And the employee on unpaid military leave for a full pay period also does not receive holiday pay for any holiday falling in that pay period. (Doc. 16-1 at 5, ¶ 11; Doc. 13-5 at 109 (Lewis Dep. at 108:6–10).)

The Plaintiffs were treated no differently as to holiday pay or accrual of paid leave hours when they were on "leave without pay" for military service than a comparable employee who was on "leave without pay" for unpaid

Family and Medical Leave Act (FMLA) leave or other unpaid leave of absence. (Doc. 16-1 at 8, ¶ 16.)

### C. The Plaintiffs are or were Hoover police officers who served in the military, took both paid and long-term unpaid military leaves, and when on unpaid military leave were not paid for holidays and did not accrue leave hours.

Plaintiff Nicholas Braden is currently employed by Hoover in its police department. Braden served in the Alabama Army National Guard. (Doc. 13-2 at 3–7.) He took military leave from early August 2011 continuously until the second week of December 2011, a period of about 4 months or about 126 calendar days (or about 90 work days). (Doc. 13-14 at 1.) He was on continuous military leave from the end of June 2017 to the end of June 2018, about 12 months or around 368 calendar days (or around 262 work days). (Doc. 13-14 at 18–19.) During those two extended military leaves he was on "leave without pay" status for 29 full pay periods (58 weeks or 290 work days), though only 25 of those pay periods were ones in which he would have accrued sick leave and annual leave hours if on paid status. If he had been on paid status for those pay periods, he would have received 120 hours of holiday pay, accrued 24 hours of personal leave, accrued 75 hours of sick leave, and accrued 120 hours of annual leave. (Doc. 13-14; Doc. 13-9 at 1; Doc. 37 at 2.)

Plaintiff Thaddaeus Myrick was employed by Hoover in its police department from May 2016 to December 2018. From the first part of June

2017 until early August 2018, Myrick was on continuous military leave, a continuous period of about 14 months or about 427 calendar days (or around 305 work days). (Doc. 13-13 at 1–4.) Myrick served in the Alabama Army National Guard, and while on military leave he was on "leave without pay" status for 30 full pay periods (60 weeks or 300 work days), though only 26 of those pay periods were ones in which he would have accrued sick leave and annual leave hours if on paid status. If he had been on paid status for those pay periods, he would have received 104 hours of holiday pay, accrued 24 hours of personal leave, accrued 78 hours of sick leave, and accrued 104 hours of annual leave. (Doc. 13-13; Doc. 13-10 at 1; Doc. 37 at 2; Doc. 13-1 at 2–3, 6–12.)

Plaintiff Jessie Popee is currently employed by Hoover in its police department. Popee served in the Alabama Air National Guard. (Doc. 13-3 at 7–26.) Popee took continuous military leave from early October 2001 to the end of April 2003, a period of about 19 months or around 571 calendar days (about 407 work days). (Doc. 13-16 at 21–23.) Popee had another period of continuous military leave from early February 2004 to early January 2006, a period of about 23 months or about 693 calendar days (about 495 work days). (Doc. 13-16 at 24–26.) Popee took a third period of continuous military leave from early July 2008 to mid-August 2009, a little over 13 months or around

407 calendar days (around 291 work days). (Doc. 13-16 at 33–35.) Popee took another shorter period of continuous military leave from early August 2010 to early October 2010, about 2 months or about 54 calendar days (about 38 work days). (Doc. 13-16 at 38–39.) While on these military leaves, Popee was on "leave without pay" status for 103 pay periods (206 weeks or 1,030 work days). If he had been on paid status for those pay periods, he would have received 448 hours of holiday pay, accrued 24 hours of personal leave, accrued 309 hours of sick leave, and accrued 578 hours of annual leave. (Doc. 13-16; Doc. 13-11 at 1; Doc. 37 at 2.)

Plaintiff Kenneth Fountain is currently employed by Hoover in its police department. Fountain served in the United States Army Reserve. (Doc. 13-4.) He was on continuous military leave from the end of July or first part of August 2007 until the first part of November 2011, a continuous period of about 51 months or about 1,557 calendar days (about 1,111 work days). (Doc. 13-15 at 27–31.) Fountain was on military leave and "leave without pay" status for 91 full pay periods (182 weeks or 910 work days), though only 83 of those pay periods were ones in which he would have accrued sick leave and annual leave hours if on paid status. If he had been on paid status for those pay periods, he would have received 384 hours of holiday pay, accrued 96

12

hours of personal leave, accrued 249 hours of sick leave, and accrued 500 hours of annual leave. (Doc. 13-15; Doc. 37 at 2.)

### D. Hoover provides "paid administrative leave" for many reasons, including for investigations involving an employee, but it is rarely a long-term leave, especially compared to military leave.

Hoover has a type of leave called "paid administrative leave" that is available to all employees (except temporary and seasonal employees) if authorized by the employee's Department Head or administrator. (Doc. 13-6 at 9–11.) Hoover's policy manual provides that it is used for various reasons that include "job-related training, inclement weather …, jury duty, voting, participating in City promotional examinations, attending a formal City hearing, participating as the subject of a City investigative review, [and] attending court as a witness in cases not involving personal litigation …." (Doc. 13-6 at 9–10.) Except for the reason of jury duty, it is not a type of leave that an employee may elect to take without getting approval or permission from the head or administrator of the employee's department or in some cases by the Mayor, City Administrator, or Human Resources Director. (Doc. 13-6 at 9–10; Doc.18-1 at 2–3, ¶ 2.)

The typical paid administrative leave is a short-term leave. One common reason for paid administrative leave is when an employee is excused from work because City offices are closed because of inclement weather or

hazardous travel conditions. Periods of closure for inclement weather or hazardous travel conditions rarely last more than a couple of days. Taking paid administrative leave for job-related training, voting, promotional examinations, attending City hearings, and attending court as a witness are all similarly short in duration. (Doc. 18-1 at 3, ¶ 3.) Paid administrative leave may only exceed 30 days with review and approval by the Mayor. (Doc. 13-6 at 10.)

An employee on paid administrative leave is subject to being called back to work during assigned working hours. (Doc. 13-6 at 10.)

Going back as far as 1994, there were only three police-department employees who were on paid administrative leave for 120 or more consecutive days.[5] (Doc. 18-1 at 3–4, ¶ 4; Doc. 13-8 at 2–3.) Two of those three leaves were

---

[5] The district court found that there were three "and perhaps as many as six" employees of the police department who have used paid administrative leave for 120 consecutive days or longer since 1994. (Doc. 34 at 8.) But the evidence does not support a finding of six. Hoover disclosed that there were three police-department employees with paid administrative leaves of 120 days or more since 1994, and Hoover withheld the names of them to protect the privacy of the employees or former employees who are not involved in this action. (Doc. 18-1 at 3–4, ¶ 4; Doc. 13-8 at 2–3.) Plaintiff Fountain stated in a declaration that he also knew of three. (Doc. 19-1 at 3, ¶¶ 5, 7–9.) Hoover objected to the district court's consideration of that part of Fountain's declaration because he was not, and did not allege he was, in any position to have first-hand knowledge of those employees' employment status. (Doc. 23 at 3–6.) Even if Fountain's allegations are considered, as the district court did, the Plaintiffs' evidence was that there were three employees with long-term paid administrative leaves, and Hoover's evidence was that there were three employees with long-term paid administrative leaves. Hoover could not confirm with Plaintiffs that the ones Fountain claimed to know of were the

in 1997 and 1998. (Doc. 13-8 at 2.) Information on those leaves (but not the identities of the employees) was disclosed in "Defendant City of Hoover's First Supplemental Responses to Plaintiffs' Second Interrogatories to Defendant" (Doc. 13-8.) Hoover records do not reflect the reasons for those three long-term paid administrative leaves, but Hoover does not dispute they were related to an investigation of some type. (Doc. 19-3.)

When an employee is placed on paid administrative leave for investigative review, it is a leave required or mandated by Hoover or the employee's department head. It is involuntary—not something done at the request of the employee or something the employee volunteers for. The reasoning behind paid administrative leave for an investigative review is to remove an employee from the workplace during an investigation, but because there has been no determination that the employee was involved in any wrongful conduct, the employee is not punished by denying the employee pay. To prevent unnecessary hardship on the employee, the employee is paid and treated for benefit purposes as if the employee were still working. (Doc. 18-1 at 4, ¶ 5.)

---

same ones Hoover disclosed because to confirm that would be to disclose the identities of the employees and violate their privacy. But since each side said it knew of three, then the evidence was there were three. It is speculation to conclude the Plaintiffs' three and Hoover's three were all different employees. But even if it were six, that should not make a material difference.

Excluding the three unusual cases of police-department employees with paid administrative leave that were over 120 consecutive days, and excluding those police-department employees with 35 or fewer hours of paid administrative leave (many of which are likely to include multiple days for inclement weather), there are 55 periods of paid administrative leave by police-department employees that do not appear to be weather related. Of those 55, the average time on paid administrative leave for police-department employees is 104 hours, or 13 eight-hour days. (Doc. 18-1 at 4, ¶ 6.)

There are significantly more police-department employees who have been on military leaves that are 120 consecutive days or longer than there are police-department employees who have been on paid administrative leave for 120 consecutive days or longer. (Doc. 18-1 at 4–5, ¶ 7.)

## III. Standard of Review

This is an appeal from the granting of a motion for summary judgment. Both parties moved for summary judgment. On appeal, this Court reviews "a district court's decision on summary judgment *de novo* and appl[ies] the same legal standard used by the district court, drawing all inferences in the light most favorable to the non-moving party and recognizing that summary judgment is appropriate only where there are no genuine issues of material fact." *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017); *see also Felts v. Wells*

16

*Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018). De novo review "encompasses with respect to certain cases (including summary judgments) and certain issues (including all issues of law) the appellate judges' unquestioned entitlement to weigh the arguments advanced in the trial court without considering the component of presumptive correctness that often accompanies the trial court's judgment." *Menuel v. City of Atlanta*, 25 F.3d 990, 994 n.7 (11th Cir. 1994).

## Summary of the Argument

USERRA only requires an employer to provide benefits to employees on military leave if the employer provides those benefits to employees on other forms of leave with similar status and pay. The Plaintiffs claim that paid administrative leave, which covers several reasons, is comparable to unpaid long-term military leave, and since employees on paid administrative leave are paid for holidays and accrue other paid leave, Plaintiffs contend they are due to receive holiday pay and accrue other paid leave when on unpaid military leave. But paid administrative leave is paid status and unpaid military leave is unpaid status, so the two leaves are not comparable as to "status" and "pay" under the text of 38 U.S.C. § 4316(b)(1)(B). By far the most factually similar case to this case is *Elliott v. City of Anaheim*, No. SACV 12-00736-CJC(MLGx), 2015 WL 13918896 (C.D. Cal. July 21, 2015), and that court found it

17

important that those on "leave with pay" continued to accrue paid leave time while employees on "leave without pay" did not accrue paid leave. *Elliott,* at *2. No further analysis is needed to conclude that Hoover's not providing employees on unpaid military leave with holiday pay and accrual of other paid leave does not violate USERRA.

But even if the Court analyzes the Plaintiffs' claim under the Department of Labor guidelines in 20 C.F.R. § 1002.150(b), the Court should conclude that Hoover did not violate USERRA in its treatment of the Plaintiffs. That regulation establishes three non-exclusive factors: duration, purpose, and ability of the employee to choose when to take the leave.

The duration factor, which the regulation says may be the "most significant," weighs strongly in favor of Hoover. The district court below found that the duration factor was in Hoover's favor. Among just the four Plaintiffs in this case, there were six continuous military leaves exceeding 120 work days, and those averaged about 478 work days, while the only three paid administrative leaves over 120 days in the entire Hoover police department since 1997 averaged about 341 work days. And the disparity in duration is even greater when many shorter paid administrative leaves are considered, because even excluding one- or two-day leaves for bad weather, the average paid administrative leave (excluding the three over 120 days) is only 13 days.

This large disparity in duration alone is enough to determine that paid administrative leave and unpaid military leave are not comparable.

As to the purpose factor, various courts have examined the purpose of military leave and described it in different ways. But none of those descriptions of the purpose of military leave make it comparable to the purposes of paid administrative leave. The district court below found that unpaid military leave and paid administrative leave both had the common purpose of enabling the employer to meet its obligations under the law. But Hoover is not required by law to provide paid administrative leave for investigation purposes or for some of the other reasons paid administrative leave is provided, such as inclement weather, training, voting, promotional examinations, and attending court as a witness. That finding of similar purposes does not hold up to scrutiny. The district court also found that paid administrative leave for inclement weather "keeps employees who use it safe from potential harm" and that "military leave serves the same purpose" because the officers on military leave "keep City employees safe from potential harm." Aside from the extraordinarily high level of generalization applied by this reasoning, it also ignores that the paid leave for inclement weather is for the safety of the employees taking the leave while military leave is not for the safety of the employees taking that leave. This Court should reject the district court's conclusions on the purpose factor

and instead determine that paid administrative leave and unpaid military leave do not have comparable purposes.

On the factor of the ability of the employee to determine when to take the leave, in many cases for both paid administrative leave and military leave, the employee does not have a choice as to when it is taken. But while often the employee has no choice as to when military leave occurs, sometimes employees may volunteer for military assignments or volunteer to extend their military assignments. So there is some differentiation on that factor.

Other factors other than the three listed in the regulation also support a finding that paid administrative leave and unpaid military leave are not comparable. One significant difference is that employees on paid administrative leave may be required to remain available to report to work, while those on military leave are not. Another factor is that paid administrative leave must be approved by a high-level city official, but employees who provide the necessary documentation and notice receive military leave without the need for approval from a city official.

Because paid administrative leave and unpaid military leave are not comparable, the district court's judgment for the Plaintiffs should be reversed and judgment instead entered in favor of Hoover.

## Argument

**I.    Unpaid military leave is not comparable to paid administrative leave because the statutory language of USERRA only requires employers to provide the same benefits to employees on leave with similar "status" and "pay."**

The district court erred in granting summary judgment to the Plaintiffs and in denying summary judgment to the City of Hoover because long-term paid administrative leave for investigations is not comparable to long-term unpaid military leave, and when the Plaintiffs were on unpaid military leave, they were treated the same as any other employee of similar status and pay who was on unpaid leave.

USERRA provides that when an employee is absent from work for military service, the employee is "(A) deemed to be on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having *similar* seniority, *status*, *and pay* who are on furlough or leave of absence . . . while such person performs such service." 38 U.S.C. § 4316(b)(1) (emphasis added). In other words, an employee on leave from his or her civilian job to perform service for the military must be provided the "rights and benefits" that the employer generally provides to employees who are taking some other form of leave with "similar seniority, status, and pay."

21

When addressing a statutory claim, a court's "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). The district court did not do any analysis or application of the text of § 4316(b)(1), but applying that text here supports Hoover's treatment of the Plaintiffs' military leaves.

The Hoover policy and practice of providing holiday pay and accrual of personal leave, sick leave, and annual leave to employees on "paid status" and not providing it to employees on "unpaid status" directly corresponds with two of the three "similar[ities]" mentioned in the statutory language: status and pay. *See* 38 U.S.C. § 4316(b)(1)(B) ("rights and benefits … generally provided … to employees having similar seniority, status, and pay who are on furlough or leave of absence"). No party disputes (a) that Hoover employees on leave and on paid status receive holiday pay and accruals of annual leave, sick leave, and personal leave, and (b) that Hoover employees on leave and on unpaid status do not receive holiday pay and various leave accruals. Thus, Hoover complies with the statutory language of § 4316(b)(1)(B) to treat employees on unpaid military leave the same as employees on leave with similar "status" and "pay" (unpaid status) the same. The Plaintiffs' contention that an employee on paid administrative leave is comparable to their unpaid military leaves must be

rejected because employees on paid administrative leave are not "employees having similar seniority, status, and pay who are on furlough or leave of absence" to an employee on unpaid military leave.

The Plaintiffs argued in the district court that "the characterization of the leave as paid or unpaid is a distinction with no legal significance under USERRA." (Doc. 15 at 16.) The U.S. Department of Labor (DOL) has also taken that position, relying on a statement in a congressional committee report.[6] But that argument goes against the text of § 4316(b)(1)(B) relating to other employees on other types of leaves with similar "status" and "pay." USERRA's text at § 4316(b)(1)(B) makes pay a factor. And the DOL's position is not due deference when the issue is addressed in the statute's text.[7]

The statute's language establishes the necessary conclusion that the Plaintiffs' unpaid military leave is not similar under USERRA to paid administrative leave, and no further inquiry is necessary to conclude that the

---

[6] *See* Uniformed Services Employment and Reemployment Rights Act of 1994; Final Rules, 70 Fed. Reg. 75,246 at 75,264 (Dec. 19, 2005) ("USERRA's legislative history indicates that Congress intended that for the purposes of implementing this provision, it is irrelevant whether the non-military leave is paid or unpaid. See H.R. Rep. 103-65, Pt. I, at 33–34 (1993).").

[7] *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 665 (2007) ("[D]eference is appropriate only where 'Congress has not directly addressed the precise question at issue' through the statutory text.") (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984)).

summary judgment for the Plaintiffs was erroneous and that, instead, summary judgment should have been entered for Hoover.[8]

In *Elliott v. City of Anaheim*, No. SACV 12-00736-CJC(MLGx), 2015 WL 13918896 (C.D. Cal. July 21, 2015), a case with very similar facts, the court concluded that one the plaintiffs, Officer Cromer, a police officer employed by the City of Anaheim, California, was not entitled to accrue paid vacation leave or paid sick leave while on unpaid military leave even though employees on paid administrative leave accrued vacation leave and sick leave. The City of Anaheim provided 30 days of paid military leave, which is similar to Hoover's 21 days of paid military leave. *Elliott*, 2015 WL 13918896, at *1 ("California law requires the City to provide fully paid leaves of absence and continued benefits for up to thirty days to City employees who are called to active duty and have been employed by the City for at least one year."). Much like

---

[8] *See Robinson*, 519 U.S. at 340 ("Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241 (1989))); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002) ("'We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete."'" (quoting, with omitted citations, *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992), which was quoting *Rubin v. United States,* 449 U.S. 424, 430 (1981))); *Ron Pair Enterprises, Inc.,* 489 U.S. at 240–41 ("[T]here generally is no need for a court to inquire beyond the plain language of the statute.").

Hoover's policy, under a "Memorandum of Understanding (MOU)" between Anaheim and its police-department employees, "employees who receive compensation from the City while absent from work are classified under the 'leave with pay' category," and "[i]mportantly, an employee who is on 'leave with pay' is entitled to the continued accrual of paid leave time, *i.e.*, vacation time and sick leave, while an employee who is on 'leave without pay' is not." *Elliott*, 2015 WL 13918896, at *2. Like the Plaintiffs here, Officer Croomer argued that "military leave is comparable to the City's administrative paid leave . . . which provide[s] for the accrual of benefits." *Elliott*, 2015 WL 13918896, at *4. The court noted that the uncontroverted evidence showed that "the longer-term administrative leaves generally occur when an employee is being investigated for allegations of serious misconduct" and that "[o]ther non-investigation based administrative leaves last for only a few days to one week." *Id.*

The court in *Elliott* then concluded that the City of Anaheim's "longer-term administrative leave, issued when investigating the potential misconduct of an officer," was not leave "comparable to a situation where an officer takes military leave after being mandatorily deployed to serve the country." *Id*. The court therefore entered summary judgment for Anaheim on Officer Croomer's claim. *Id*. The court recited the factors of "duration of the leave, purpose of the

leave, and the ability of the employee to choose when to take the leave" from 20 C.F.R. § 1002.150(b) for determining whether another form of leave is comparable to military leave (*Elliott*, 2015 WL 13918896, at *3) and noted that the "the longer-term administrative leaves generally occur when an employee is being investigated" while other "non-investigation based administrative leaves last for only a few days to one week" (*id*. at *4). But the court appeared to find it "important[]" that those on "leave with pay" continued to accrue paid leave time while employees on "leave without pay" do not accrue paid leave. *See id.* at *2 ("Importantly, an employee who is on 'leave with pay' is entitled to the continued accrual of paid leave time, *i.e.*, vacation time and sick leave, while an employee who is on 'leave without pay' is not.").[9]

Thus, in *Elliott*, the most factually similar case to this case, the court correctly considered the pay status of the plaintiffs to be important and dispositive. Similarly, this Court should follow the text of § 4316(b)(1)(B),

---

[9] The court in *Elliott* had in a previous order ruled that other plaintiffs who did not receive accrual of paid-leave time while on military leave were on "leave with pay" and were thus entitled under the MOU and USERRA to accrual of paid-leave time since other employees on other paid leaves accrued paid-leave time. *See Elliott*, 2015 WL 13918896, at *2 (referring to an April 1, 2014 order and stating that other plaintiffs "were on leaves with pay and, like other similarly-situated employees on leaves with pay, were entitled to accrue paid leave during their military deployments"). That earlier April 1, 2014 order in *Elliott* is not reported, but it is on PACER or the federal courts' CM/ECF system at https://ecf.cacd.uscourts.gov/doc1/031118666262 and is Doc. 47 on the docket of that case.

likewise conclude that Plaintiffs' unpaid military leave is not similar under USERRA to paid administrative leave, reverse the summary judgment for the Plaintiffs, and either render a summary judgment for Hoover or remand the case with instructions for the district court to do so.

## II. Unpaid military leave is not comparable to paid administrative leave under the regulatory guidance of the Department of Labor.

Although the language of 38 U.S.C. § 4316(b)(1)(B) compels the conclusion that the district court erred in granting summary judgment to the Plaintiffs and in denying summary judgment to the City of Hoover, the regulatory guidance of the U.S. Department of Labor (DOL) also establishes that Hoover's paid administrative leave (including its long-term paid administrative leave for investigations) is not comparable to the Plaintiff's long-term unpaid military leave.

The DOL's regulation at 20 C.F.R. § 1002.150 is the DOL's guidance on determining which non-seniority benefits an employee is entitled to while on military leave. Hoover calls vacation leave "annual leave," and "personal leave" is also leave that can be taken at the discretion of an employee, including for vacation. (*See* Doc. 13-6 at pp. 3 & 5.) Section 1002.150(c) says that accrual of vacation leave "must be provided by an employer to an employee on a military leave of absence *only if* the employer provides that benefit to similarly situated employees on comparable leaves of absence." 20

27

CFR § 1002.150(c) (emphasis added). The DOL added § 1002.150(c) because commentors to the proposed regulation sought clarification specifically as to vacation,[10] but there is no reason to conclude that sick leave, other forms of paid time off, or paid holidays should be treated differently from vacation leave. *See, e.g.*, *Hoefert v. American Airlines, Inc.*, 438 F. Supp. 3d 724, 736 (N.D. Tex. 2020) ("sick-time accrual is not a seniority-based benefit").

The DOL guidance on whether any two types of leave are comparable is found at 20 C.F.R. § 1002.150(b): "In order to determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor to compare. For instance, a two-day funeral leave will not be 'comparable' to an extended leave for service in the uniformed service. In addition to comparing the duration of the absences, other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered." This guidance does not give a rigid test. It lists three factors that "should" be considered—duration of the leaves, purpose

---

[10] *See* 70 Fed. Reg. 75,246 at 75,263 (Dec. 19, 2005) ("[T]he Department has long viewed the accrual of vacation leave as a non-seniority based benefit and, because a significant number of comments were received on this subject, has amended the text of the rule to reflect this determination. *See* section 1002.150(c).").

of the leaves, and ability of the employee to choose when to take the leave.[11]
But the DOL guidance doesn't preclude other factors,[12] and it suggests that
duration of the leave may be the "most significant factor." 20 C.F.R.
§ 1002.150(b).

### A. Paid administrative leave and unpaid military leave are not comparable as to duration of the leaves.

The district court in this case analyzed the duration factor (Doc. 34 at 15–
19) and concluded that military leave was on average about 3 times longer
than paid administrative leave. The district court said that "a 3:1 ratio is
significant," so the duration factor "favors the City in a USERRA comparable
leave analysis." (Doc. 34 at 19.)

---

[11] These three factors don't appear in the USERRA text. It appears the
DOL took them from *Waltermyer v. Aluminum Co. of Am.*, 804 F.2d 821 (3rd
Cir. 1986), which is a case applying a statute that is a predecessor of USERRA,
not USERRA itself, and which involved short-term military leaves for training.
*See* 70 Fed. Reg. 75,246 at 75,264 (Dec. 19, 2005).

[12] In the commentary by the DOL on the regulations when issued, the
DOL said it "declined to include as a factor in determining the comparability
of leave whether the non-military leave is paid or unpaid." 70 FR 75,246 at
75,264 (Dec. 19, 2005). That the DOL "declined to include" it as a factor in
the regulation does not mean it cannot be considered. And considering pay
status is a factor expressly mentioned in the statutory language it should be
considered despite the DOL's declining to include it (*see* Argument, Sec. I,
*supra*). *See also Huntsman v. Southwest Airlines Co.*, No. 19-CV-00083-PJH, 2021
WL 391300, at *3 (N.D. Cal. Feb. 3, 2021) (noting that the three factors of
§ 1002.150(b) are "non-exclusive"); *Clarkson*, 2021 WL 2080199, at *5 ("the
DOL regulations are not an exhaustive list").

Paid administrative leave is used for many reasons which are nearly always short-term leaves, not long leaves like the Plaintiffs' military leaves. (Doc. 18-1 at 3, ¶ 3.) Paid administrative leave is used for "job-related training, inclement weather …, jury duty, voting, participating in City promotional examinations, attending a formal City hearing, participating as the subject of a City investigative review, attending court as a witness in cases not involving personal litigation, or other appropriate reasons as approved by either the Mayor, City Administrator, or Human Resources Director." (Doc. 13-6 at 9–10.) While on paid administrative leave, an employee may be required to "remain available during assigned working hours to report to work when called," and it may only last beyond 30 days with "review and approval by the Mayor." (Doc. 13-6 at 10.)

Since 1994 there have been only three police officers who were on paid administrative leave for 120 days or more. (Doc. 13-8 at 2–3; Doc. 18-1 at 3–4, ¶ 4.) Two of those were last century, in 1997 and 1998, and the most recent one was a decade ago, starting in July 2012 and ending in October 2013. (Doc. 13-8 at 2.) The duration of those three leaves were 290 work days, 306 work days, and 428 work days. (Doc. 13-8 at 2.) If you exclude those three unusual situations, there are 55 periods of non-weather-related paid administrative leave by Hoover police-department employees, and of those 55,

the average time on paid administrative leave is 104 hours, or 13 eight-hour days. (Doc. 18-1 at 4, ¶ 6.)

On the other hand, Hoover's Human Resources Director testified that "there are significantly more police department employees on military leaves that are 120 consecutive days or longer than there are employees on administrative leave with pay for 120 consecutive days or longer." (Doc. 18-1 at 5, ¶ 7.) Plaintiff Jessie Popee by himself had three periods of continuous military leave that were of longer duration than the only three paid administrative leaves of 120 days or more (continuous military leaves of about 495 work days, 407 work days, and 291 work days, plus a fourth that was 38 work days, compared to the three long paid administrative leaves of 428 work days, 306 work days, and 290 work days). (Doc. 13-16 at 21–26, 33–35, 38–39; Doc. 13-8 at 2; *see also* Statement of Facts at subsection C, *supra*.) Plaintiff Kenneth Fountain was on military leave for a continuous period of about 1,111 work days, which is longer than all three paid administrative leaves over 120 days combined. (Doc. 13-15 at 27–31; Doc. 13-8 at 2.) Plaintiff Thaddaeus Myrick was on military leave for a continuous period of about 305 work days. (Doc. 13-13 at 1–4.) Plaintiff Nicholas Braden took one continuous military leave for around 262 work days and another for around 90 work days. (Doc. 13-14 at 1, 18–19.)

So just among the four Plaintiffs in this case, there were six continuous military leaves over 120 work days, and those averaged over 478 work days,[13] while the three paid administrative leaves over 120 days averaged over 341 work days.[14] Also, other than those three paid administrative leaves over 120 days and taking out the very short paid administrative leaves for bad weather, the average paid administrative leave is only 13 days, much less than the Plaintiffs' military leaves. (Doc. 18-1 at 4, ¶ 6.)

This large disparity in duration alone is enough to determine that paid administrative leave and unpaid military leave are not comparable. *See Tully v. Dep't of Justice*, 481 F.3d 1367, 1370 (Fed. Cir. 2007) (affirming the administrative judge's finding "Mr. Tully's absence to be substantially different from an absence for court duty because of the different lengths of the periods of absence and thus declined to require that Mr. Tully be accorded the same benefits as those enjoyed by employees on court leave"); *Hoefert*, 438 F. Supp. 3d at 739, 741 (holding that military leave was not comparable to sick leave, jury leave, or vacation leave because, among other reasons, "the durations are different" because the average length of all military leaves were

---

[13] Plaintiffs' over-120-day military leaves were: 495 + 407 + 291 + 1,111 + 305 + 262 = 2,871; 2,871 ÷ 6 = 478.5.

[14] The only three paid administrative leaves were: 428 + 306 + 290 = 1,024; 1,024 ÷ 3 = 341.33.

longer than the average length of sick leaves, the average length of jury leaves, and the length of vacation leaves).

That paid administrative leaves over 120 days are rare—only 3 in the last 25 years and 1 in the last 20 years—supports a finding that the duration factor favors Hoover even though this could be characterized as frequency rather than duration. One district court recently explained that while "duration and frequency are separate measures, frequency is useful in the duration analysis" and, regardless, "the DOL regulations are not an exhaustive list." *Clarkson v. Alaska Airlines, Inc.*, No. 2:19-CV-0005-TOR, 2021 WL 2080199, at *5 (E.D. Wash. May 24, 2021).

In *Clarkson*, the court granted the defendant's motion for summary judgment on claims that the defendant's failure to pay plaintiff while on military leave and its system of providing flight credits for scheduling purposes denied him rights and benefits that he would have been provided if not on military leave. The court analyzed whether certain forms of non-military leave—jury duty, bereavement, and sick—are comparable to military leave, and concluded the duration factor supported the defendant. *Clarkson*, 2021 WL 2080199, at *5–6. That long paid administrative leaves in this case are highly infrequent while long military leaves are not infrequent is part of the comparability analysis and supports Hoover's position.

33

Thus, the district court was correct to conclude that the duration factor "favors the City in a USERRA comparable leave analysis." (Doc. 34 at 19.) But despite concluding that "the duration of the average paid administrative leave compared to the duration of the average military leave in the Hoover Police Department favors the City in a USERRA comparable leave analysis because a 3:1 ratio is significant" (Doc. 34 at 19), the district court still ruled against Hoover and found paid administrative leave to be comparable to unpaid military leave. The district court improperly discounted the duration factor, which the DOL says is "the most significant factor." 20 C.F.R. § 1002.150(b). The district court said, "The duration factor typically is more significant than the purpose and control factors, but here, the duration of average military leave and average administrative leave is not so different that the duration factor must drive the Court's analysis." (Doc. 34 at 24.)

Without citing any evidence or other authority, the district court said that "military leaves and administrative leaves from the Hoover Police Department are similar in that they typically last for short periods of time but may, occasionally, last one year or more." (Doc. 34 at 17.) But Hoover's Human Resources Director's unrefuted testimony was that "there are significantly more police department employees on military leaves that are 120 consecutive days or longer than there are employees on administrative leave with pay for

120 consecutive days or longer." (Doc. 18-1 at 5, ¶ 7.) And just these four Plaintiffs—who are just a few of many officers who have taken long unpaid military leaves—each had at least one military leave lasting more than one calendar year (Braden—around 368 calendar days; Myrick—around 427 calendar days; Popee—around 693 calendar days, 571 calendar days, and 407 calendar days; Fountain—around 1,557 calendar days). (Statement of Facts at subsection C, *supra*.)

The district court also said, "Absent active conflict, military leave typically is relatively brief for reserve duties like training and drills." (Doc. 34 at 17.) There was also no evidence or other authority to support that statement, but even if true, the United States has been in active conflict since 2001 and still is. *See, e.g.*, *Ali v. Trump*, 959 F.3d 364, 366, 373 (D.C. Cir. 2020) (noting that "[s]hortly after the September 11, 2001 terrorist attacks, Congress passed the Authorization for Use of Military Force ("AUMF"), Pub. L. No. 107-40, 115 Stat. 224 (2001)," that "the 2001 AUMF does not have a time limit," and that "this is a long war with no end in sight").

The district court also said that it was "not persuaded by the fact that the City has placed only three police officers on extended paid administrative leave over the past few decades" and speculated that "[t]hat number could easily double or triple if several officers were accused of joint or related conduct,"

and that Hoover "quickly could find itself in a position in which it had as many police officers on extended administrative leave as on deployed military leave." (Doc. 34 at 18.) While that is theoretically possible, there is no evidence it has ever happened, and nothing suggests it is likely. The typical scenario is for an investigation to be concluded within 2 or 3 weeks. (Doc. 18-1 at 4, ¶ 6.) The district court said that "the record suggests that only four officers over the same time span have used military leave" (Doc. 34 at 18–19), but this ignores the testimony of Hoover's Human Resources Director that "there are significantly more police department employees on military leaves that are 120 consecutive days or longer than there are employees on administrative leave with pay for 120 consecutive days or longer." (Doc. 18-1 at 5, ¶ 7.) These unsupported statements of the district court should be given no weight in this Court's analysis.

The evidence thus compels the conclusion that the duration factor, which "may be the most significant," weighs heavily in favor of Hoover.

**B. Paid administrative leave and unpaid military leave are not comparable as to purpose of the leave.**

The second of the three factors expressly mentioned in the DOL regulatory guidance in 20 C.F.R. § 1002.150(b) is "purpose of the leave," which may be a less significant factor than duration of the leave, but that factor also does not support finding paid administrative leave comparable to unpaid military leave.

The DOL's regulations don't give any elaboration or guidance on the "purpose of the leave" factor or how similar the purposes have to be to be comparable. But even with no such guidance, it is not difficult to see that Hoover's paid administrative leave for investigative purposes (or any other purposes) is different from unpaid military leave.

There are many purposes for paid administrative leave (jury duty, voting, promotional exams, attending a formal City hearing, participating as the subject of a City investigative review, attending court as a witness in cases not involving personal litigation, or other appropriate reasons as approved by either the Mayor, City Administrator, or Human Resources Director). (Doc. 13-6 at 9–10; Doc. 18-1 at 2–3, ¶¶ 2 & 3.) None of these purposes are comparable to military leave.[15]

---

[15] *See Tully v. Dep't of Justice*, 481 F.3d 1367, 1370 (Fed. Cir. 2007) (holding that military leave was not comparable to court leave); *Synoracki v. Alaska Airlines, Inc.*, No. C18-1784RSL, 2022 WL 1746777, at *6 (W.D. Wash. May 31, 2022) ("Plaintiff has not met his burden of showing that military leave, as experienced by the class and evidenced by the record, is comparable to jury duty."); *Clarkson*, 2021 WL 2080199, at *6–7 (holding military leave was not comparable to jury leave (among others)); *Hoefert*, 438 F. Supp. 3d at 739, 741 (holding that military leave was not comparable to jury leave); *Moss v. United Airlines, Inc.*, 420 F. Supp. 3d 768, 773–75 (N.D. Ill. 2019) (holding that military leave was not comparable to jury leave or leave to work for the employee's labor union); *Elliott v. City of Anaheim*, No. SACV 12-00736-CJC(MLGx), 2015 WL 13918896, at *4 (C.D. Cal. July 21, 2015) (holding that military leave was not comparable to administrative leave for investigating the potential misconduct of an officer).

Though there is no documentation showing the reasons for the three police-department employees on paid administrative leave for more than 120 days, no party disputes that they were for investigative review.[16] When Hoover or some other entity (e.g., the state or federal government) is doing an investigation that may involve employees of Hoover, Hoover may or may not require that the employee potentially involved be placed on leave pending the investigation. The reasoning behind paid administrative leave for an investigative review is to remove an employee from the workplace during an investigation, but because there has been no determination that the employee was involved in any wrongful conduct, the employee is not punished by denying him or her pay. To prevent unnecessary hardship on the employee, the employee is paid and treated for benefit purposes as if the employee were still working. (Doc. 18-1 at 4, ¶ 5.) Paid administrative leave for an investigative review is involuntary and not something done at the request of the employee or that the employee volunteers for. (Doc. 18-1 at 4, ¶ 5.) An

---

[16] *See* Doc. 19-3 (referencing discovery responses at Doc. 13-8 and saying that Hoover "would not dispute [the 3 administrative leaves of over 120 days by police-department employees] being characterized as related to an investigation of some type"); Doc. 22 at 1 (Plaintiffs framing the issue as, "Whether administrative leave pending an investigation for City of Hoover law enforcement officers is comparable to military leave is the issue underlying the Plaintiff law enforcement officers' Motion for Summary Judgment on their USERRA claims and the City of Hoover's opposition thereto.").

employee on paid administrative leave for investigative purposes (and most other purposes) is subject to being called back to work, so the employee is not likely to be working another job to replace the income from not working if the administrative leave were not paid. (Doc. 13-6 at 10.)

When an employee takes military leave, there is no possible wrongdoing being investigated that may involve the employee. So that is a rather obvious difference in purpose. One court has described the purpose of military leave as "service to the government," and if that is the purpose, then leave for investigative purposes is not comparable because that is not providing any service to anyone. *Synoracki*, 2022 WL 1746777, at *5. Paid administrative leave for investigations is to allow an investigation, not for the employee to provide service to the government. And Hoover's status as a municipal government should not change that analysis.

In another case, the plaintiff described the purpose of military leave as "to allow employees to serve the public and to fulfill a public safety function" while the court said the purpose was "to allow employees to pursue parallel careers." *Clarkson*, 2021 WL 2080199, at *6–7. Under either of these descriptions of the purpose, it is different from paid administrative leave for investigation purposes or any of the other reasons for paid administrative leave. There is no service to the public being performed by the employee when

the employee is on paid administrative leave and no parallel career being pursued because the employee is not working.

Another court noted that the purpose of the "policy regarding military absences is solely to benefit and protect the servicemembers and not" the employer. *Hoefert*, 438 F. Supp. 3d at 740. Hoover's policy allowing it to place an employee on paid administrative leave is for it (or someone else) to investigate without a potential subject of the investigation being in the workplace. Since Hoover has the discretion to put the employee on paid administrative leave or not, it is mainly to benefit Hoover. That it is a paid leave does benefit the employee and prevents unnecessary hardship to the employee. But an unpaid leave could subject Hoover to liability for violating an employee's rights, so that also signifies paid administrative leave is for Hoover's benefit. That an employee on paid administrative leave is subject to being called back in to work also shows that its primary purpose is to benefit Hoover, not the employee. Thus, the cases analyzing and describing the purpose of military leave show that the purpose of military leave is not comparable to paid administrative leave.

The district court, however, found that military leave and paid administrative leave for investigations were comparable. (Doc. 34 at 19–22.) The district court stated, "Though the reasons for most types of administrative

leave are different from the reasons for military leave, the purpose of both leaves is the same; both enable an employer to meet its obligations under the law." (Doc. 34 at 20.) The district court said that Hoover was required to put officers under investigation on paid administrative leave: "Unless and until an employee is found to have done something wrong, the City must allow an employee to remain in paid status; an unproven allegation cannot deprive an employee of compensation. … [D]ue process compels the City to provide paid administrative leave to police officers who the City places under investigation." (Doc. 34 at 19–20.) This is not supported by the evidence.[17]

The district court cited a page in Hoover's reply brief and a declaration of Hoover's Human Resources Director, neither of which supports its statements. (Doc. 34 at 19, citing Doc. 18-1 at 4, ¶ 5, and Doc. 21 at 12.) Hoover's reply brief said, "When Hoover or some other entity is doing an investigation that may involve employees of Hoover, Hoover *may require* that the employee potentially involved be placed on leave pending the investigation." (Doc. 21 at 12 (emphasis added).) The requirements of due process prevent Hoover from denying a police officer pay and employment benefits before any suspension or

---

[17] In its discussion, the district court also cited in a footnote *Elliott v. City of Anaheim*, No. SACV 12-00736-CJC(MLGx), 2015 WL 13918896, at *4 (C.D. Cal. July 21, 2015), but the district court failed to note that the court in *Elliott* concluded that military leave and paid administrative leave for investigations were not comparable. (Doc. 34 at 19 n.10.)

termination, and *one way* (but not the only way) to do that is paid administrative leave. *See* Ala. Code § 11-43-230(a) ("Every municipality shall provide a predisciplinary hearing prior to the suspension or termination of its law enforcement officers, provided nothing herein shall preclude a municipality from placing a law enforcement officer on leave with pay until the person or body holding the hearing has made its decision in the matter."). But Hoover doesn't have to put an officer on paid administrative leave and can, instead, reassign the officer to different duties or keep the officer on the job pending the investigation. Hoover is also not required by law to provide paid leave for several of the other reasons that an employee takes paid administrative leave, including inclement weather, training, voting, promotional examinations, and attending court as a witness. On the other hand, when an officer notifies Hoover of a need for military leave or requests military leave, Hoover must provide the leave. So Hoover is not required to provide paid administrative leave for investigations but has discretion, while it has no discretion when it comes to military leave. That difference may or may not be relevant to the "purpose" of the leave, but it shows how they function differently and, regardless, refutes the district court's conclusion that both are obligations under the law.

The district court also found that paid administrative leave for inclement weather "keeps employees who use it safe from potential harm caused by hazardous conditions" and that "military leave serves the same purpose as administrative leave for inclement weather" because "officers who use military leave to train for deployment or to serve our country in military conflicts keep City employees safe from potential harm." (Doc. 34 at 21–22.) That's a very broad generalization. The potential harms being addressed by leave for inclement weather and leave for military service are very different types of harm, and it is stretching the purposes of these two policies very far to get them to appear comparable at the general purpose of safety. Additionally, the purpose of paid leave for inclement weather is to keep the *employee on leave* safe, while the purpose of military leave is *not* to keep the *employee on leave* safe—it's to keep our nation safe.

Thus, this Court should reject the reaching and unsupported conclusions of the district court as to the purposes of military leave and paid administrative leave, particularly administrative leave for investigations, and instead conclude that those forms of leave do not have comparable purposes.

**C. Paid administrative leave and unpaid military leave are only somewhat comparable as to ability to choose when to take leave, and other factors also show that these leaves are not comparable.**

Though the factors of duration and purpose support Hoover's position that paid administrative leave and unpaid military leave are not comparable, which makes unnecessary the analysis of whether the employee's ability to choose when take leave is comparable, there is some differentiation regarding ability to choose when to take leave. It is undeniable that in many cases for both paid administrative leave and military leave, the employee does not have a choice as to when it is taken. When for investigative purposes, Hoover decides when the employee goes on paid administrative leave, and that's true mostly for paid administrative leave for other reasons, too. For military leave, often the employee has no choice as to when it occurs, but sometimes employees may volunteer for military assignments or volunteer to extend their military assignments. *See Rogers v. City of San Antonio*, 392 F.3d 758, 761 (5th Cir. 2004) ("Reservists may volunteer or be ordered to take military leave to perform extra duties."); 38 U.S.C. § 4303(13) (stating that the term "service in the uniformed services" means "the performance of duty on a voluntary or involuntary basis in a uniformed service under competent authority"). So at least in some cases, there can be some employee choice involved about when

or even if to take military leave. And that supports a finding that they are not precisely comparable.

Looking at factors other than those mentioned in § 1002.150(b), which are not exclusive,[18] one significant difference is that employees on paid administrative leave may be required "to remain available during assigned working hours to report to work when called." (Doc. 13-6 at 10.) Those on military leave can't be required to be available to be called in to work. Remaining available to be on call to come in to work justifies providing leave accrual in contrast to not providing leave accrual to those on military leave who can't be required to be available to work.[19] That is a significant difference which defeats a finding that these two forms of leave are comparable.

The district court dismissed this difference, stating that "jurors likely would infer that the City would not exercise the option for an officer placed on leave

_____

[18] *See Huntsman v. Southwest Airlines Co.*, No. 19-CV-00083-PJH, 2021 WL 391300, at *3 (N.D. Cal. Feb. 3, 2021) (noting that the three factors of § 1002.150(b) are "three non-exclusive factors to consider whether two forms of leave are comparable"); *Clarkson*, 2021 WL 2080199, at *5 ("the DOL regulations are not an exhaustive list").

[19] It is notable that when on military leave in active military service, the person serving accrues 30 days of paid leave per year from the military (2.5 days per month). *See Military Leave: What It Is and How It Works*, www.militaryonesource.mil/military-life-cycle/new-to-the-military/getting-settled/military-leave-and-how-it-works (visited 7/18/2022) (a website in the U.S. Dept. of Defense's network of support for the military community). The Plaintiffs' position is that they should double accrue paid leave when on military leave—accruing it from both the military and the City of Hoover.

for suspicion of wrongdoing." (Doc. 34 at 23.) But no evidence supports the conclusion that Hoover would not call an employee on paid administrative leave to come in to work, and the district court's statement is speculation. One could envision an employee with specialized skill needed that may be unrelated to the subject of the investigation being called in if that skill were needed in a particular circumstance. That, too, may be speculative, but it is no more speculative that the district court's statement. What is not speculative and what is reflected in the evidence is that Hoover's policy provides that an employee on paid administrative leave may be required "to remain available during assigned working hours to report to work when called." (Doc. 13-6 at 10.) The district court was wrong to dismiss this evidence of employees being subject to being called in based on its own speculation.

Another factor that shows paid administrative leave and unpaid military leave aren't comparable forms of leave is that paid administrative leave must be approved by a high-level city official (a department head or administrator) and, if longer than 30 days, must be approved by the Mayor. (Doc. 13-6 at 9–10.) For military leave, employees who provide the necessary documentation and notice receive the leave without the need for approval from a city official. (Doc. 13-6 at 13–14.).

46

Thus, multiple factors differentiate paid administrative leave from long-term unpaid military leave, compelling the conclusion that these two forms of leave are not comparable under the USERRA statute at 38 U.S.C. § 4316(b)(1) and the DOL regulation at 20 C.F.R. § 1002.150. This Court should therefore reverse the district court's summary judgment for the Plaintiffs and instead enter a judgment for Hoover.

## Conclusion

Based on the evidentiary record and the argument above, the City of Hoover requests that this Court reverse the district court's summary judgment in favor of the Plaintiffs and render a judgment in favor of the City of Hoover or remand the case with instructions for the district court to do so.

Respectfully submitted.

 s/ *Michael L. Jackson*
Michael L. Jackson
mjackson@wallacejordan.com

 s/ *Cecil H. Macoy Jr.*
Cecil H. Macoy Jr.
cmacoy@wallacejordan.com

Of Counsel:
Wallace Jordan Ratliff & Brandt LLC
800 Shades Creek Parkway, Suite 400
Birmingham, AL  35209
(205) 870-0555

Attorneys for Appellant
City of Hoover, Alabama

## Certificate of Compliance

This brief contains 11,669 words (excluding the cover page, certificate of interested persons and corporate disclosure statement, statement regarding oral argument, table of contents, table of citations, statement of subject-matter and appellate jurisdiction, certificate of compliance, and statement regarding service) and complies with the limitations of Fed. R. App. P. 32(a)(7)(B) and 11th Cir. R. 32-4. This brief was prepared in Calisto MT 14-point font (or larger in some parts of the cover and some headings), and it complies with the type-style and typeface requirements of Fed. R. App. P. 32(a)(6) and Fed. R. App. P. 32(a)(5).

## Statement Regarding Service

On July 21, 2022, counsel for Appellant City of Hoover, Alabama, electronically filed the foregoing brief with the Clerk of Court of the United States Court of Appeals for the Eleventh Circuit using the CM-ECF system, which will send notification of the filing to counsel for Plaintiffs.