[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11621

_____

THADDAEUS MYRICK,
in his official capacity as Police Officer for the
City of Hoover, Alabama,
NICHOLAS D. BRADEN,
in his official capacity as Police Officer for the
City of Hoover, Alabama,
JESSIE POPEE,
in his official capacity as Police Officer for the
City of Hoover, Alabama,
KENNETH L. FOUNTAIN,
in his official capacity as Police Officer for the
City of Hoover, Alabama,

Plaintiffs-Appellees,

*versus*

2                    Opinion of the Court                    22-11621

CITY OF HOOVER, ALABAMA,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:19-cv-01728-MHH

————————————

Before WILSON, JILL PRYOR, Circuit Judges, and CONWAY,* District
Judge.

CONWAY, District Judge:

Military reservists play a vital role in our nation's defense
policy. When called to service, these men and women are expected
to leave their civilian jobs, sometimes for years on end. To alleviate
this burden, Congress enacted the Uniformed Services Employ-
ment and Reemployment Rights Act of 1994 (USERRA). 38 U.S.C.
§ 4301(a). Under USERRA, employers must provide the same
rights and benefits to employees on military leave that they provide
to similarly situated employees on comparable forms of non-mili-
tary leave. *Id.* § 4316(b)(1)(B).

---

* Honorable Anne C. Conway, United States District Judge for the Middle
District of Florida, sitting by designation.

Thaddaeus Myrick, Nicholas Braden, Jessie Popee, and Kenneth Fountain (collectively, the Officers) worked as police officers for the City of Hoover, Alabama. They also served as military reservists. Over a two-decade span, the Officers were summoned to active-duty service a combined thirteen times. While away, Hoover did not provide the Officers the same holiday pay and accrued benefits that it gave employees on paid administrative leave. This disparate treatment prompted the Officers to sue Hoover under USERRA. And it led the district court to grant summary judgment for the Officers.

Hoover asks us to reverse the district court's judgment for two reasons. First, Hoover argues that the Officers are not similar to employees placed on paid administrative leave. Second, Hoover asserts that military leave is not comparable to paid administrative leave. We disagree on both points. Therefore, we affirm.

## I.      BACKGROUND

We begin by describing the relevant portions of Hoover's leave policy. We then turn to the events precipitating this lawsuit and the litigation that followed.

### A. Hoover allows employees on "paid status" to accrue benefits and collect holiday pay

Hoover offers its employees various benefits, two of which are pertinent to this appeal. First, Hoover allows its employees to accrue different types of leave and convert their accrued leave to

compensation. Second, Hoover affords employees twelve paid holidays each year, equal to eight hours of pay per holiday.

To qualify for these benefits, Hoover employees must be on "paid status." An employee is on paid status when he or she is on the payroll or using paid leave. If an employee is off the payroll and not using paid leave, Hoover places him or her on "unpaid status." Employees on unpaid status do not accrue leave and do not collect holiday pay.

### B. Hoover caps accrued leave and holiday pay for employees on military leave

Hoover offers military leave to employees absent for military service. Hoover provides 168 hours of paid military leave annually, and during those hours, military employees remain on paid status, continuing to accrue benefits and earn holiday pay. Once military employees exhaust those hours, they convert to unpaid status.[1] From that point forward, military employees accrue no benefits and collect no holiday pay until the new fiscal year, when Hoover awards another 168 hours of paid military leave.

### C. Hoover does not cap accrued leave and holiday pay for employees on paid administrative leave

Hoover also provides paid administrative leave to its employees. This form of leave requires authorization from the

---

[1] After exhausting those 168 hours, military employees also have the option to use other forms of paid leave that they have accrued.

employee's supervisor, and if the leave exceeds thirty days, from Hoover's mayor.

Hoover permits paid administrative leave for various reasons, including jury duty, voting, inclement weather, promotional exams, court hearings, formal city hearings, "or other appropriate reasons." Hoover has utilized that final, catch-all category to place employees on paid administrative leave while they are under internal investigation. Investigative administrative leave serves a twofold purpose. It allows Hoover to remove an employee under investigation from the workforce without violating the Due Process Clause, and it protects the employee from hardship prior to a finding of wrongdoing. Employees on paid administrative leave remain on paid status—they collect a salary, accrue benefits, and take-home holiday pay.

Paid administrative leave is typically short: absences caused by inclement weather usually last a few days, while absences for most other reasons average thirteen workdays. However, since 1994, Hoover has placed at least three police department employees on paid administrative leave lasting longer than 120 consecutive days. Each time, Hoover placed the employee on paid administrative leave because the employee was under internal investigation. Hoover put two employees on investigative administrative leave in 1997—the first for 440 days, and the second for 405 days. Hoover placed a third employee on investigative administrative leave for 599 days in 2012. Together, these three police officers

took investigative administrative leave for an average of sixteen months each.

### D. The Officers take military leave

Officers Myrick, Braden, Popee, and Fountain worked for the Hoover Police Department while serving as military reservists. During the course of their employment, each Officer was called to active-duty service, either for training or deployment. As a result, each Officer took military leave under Hoover's policy.

The Alabama Army National Guard ordered Officer Myrick to active duty three times, all in 2017. He was called for training twice, for fifty-six days and fourteen days. That same year, the National Guard deployed Officer Myrick to Afghanistan for 377 days.

Officer Braden also served in the Alabama Army National Guard, who called him for 122 days of training in 2011, and twenty-five days of training in 2018. Officer Braden was deployed to Afghanistan in 2017 for 354 days.

Officer Popee, a member of the Alabama Air National Guard, was called to active-duty service six times. He was called for training three times: first for eighteen days in 1999, then for fifty-nine days in 2010, and lastly for seventy days in 2012. He was deployed another three times: for 607 days starting in 2001, 691 days starting in 2004, and 426 days starting in 2008.

Officer Fountain served in the United States Army Reserve. He was ordered to active-duty service for one year starting in 2007,

which the military extended annually until 2011, for a total of 1,752 days.

### E. The Officers sue Hoover, and the district court grants summary judgment

During their periods of service, each Officer exhausted their 168 hours of annual paid military leave. As a result, Hoover converted each Officer to unpaid status. Once converted, the Officers accrued no benefits and earned no holiday pay while on military leave. In the meantime, Hoover provided those benefits to employees on paid administrative leave. This disparity in benefits drove the Officers to sue Hoover under USERRA. Both parties moved for summary judgment, and the district court granted the Officers' motion. Hoover now appeals.

## II.    STANDARD OF REVIEW

This Court reviews a district court's rulings on cross-motions for summary judgment de novo, viewing "the facts in the light most favorable to the nonmoving party on each motion." *James River Ins. Co. v. Ultratec Special Effects Inc.*, 22 F.4th 1246, 1251 (11th Cir. 2022). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.    DISCUSSION

USERRA is the latest in a long line of laws that protect employees who serve in the military. Congress enacted USERRA to mitigate the employment disadvantages that stem from non-career military service. 38 U.S.C. § 4301(a)(1). In pursuit of this purpose, Congress imposed a number of obligations on employers and granted a number of entitlements to military employees. This appeal is about the obligations and entitlements in § 4316(b).

Section 4316(b)(1) forces employers to give employees on military leave the same rights and benefits provided to similarly situated employees on non-military leave:

> [A] person who is absent from a position of employment by reason of service in the uniformed services shall be . . . entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence . . . .

Through this statute, Congress set forth a two-step process for determining which benefits are available to employees on military leave. First, the military employee must identify a group of non-military employees "having similar seniority, status, and pay who are on . . . leave of absence[.]" *Id.*; § 4316(b)(1)(B). Second, the military employee must prove that those employees took a form of non-military leave that is comparable to military leave. 20 C.F.R. § 1002.150(b). A military employee who clears both hurdles is entitled to the same benefits that the similarly situated employees received while on the comparable form of leave.

The district court held that Hoover violated § 4316(b)(1)(B) when it provided benefits[2] to employees on paid administrative leave that it withheld from employees on military leave. Hoover challenges this conclusion on two fronts. First, Hoover argues that the district court mistakenly found the Officers similar to employees on paid administrative leave, rather than employees on unpaid status and unpaid leave. Second, Hoover contends that the district court incorrectly concluded that military leave was comparable to paid administrative leave. We disagree with both of Hoover's arguments.

## A. The Officers had a similar "status" and "pay" as Hoover employees on paid administrative leave

Employees on military leave are only entitled to the rights and benefits provided to similarly situated employees. This limitation springs from USERRA's text, which grants military employees the same benefits provided "to employees having similar seniority, status, and pay who are on . . . leave of absence[.]" § 4316(b)(1)(B).

Seizing on the quoted language, Hoover argues that we must analyze an employee's "status" and "pay" *while* he or she is on leave. While the Officers were on leave, Hoover placed them on unpaid status and provided them no pay. Thus, Hoover posits that they were similar to other employees on unpaid status and unpaid leave.

---

[2] Neither party disputes that accrued leave and holiday pay are "benefits" under USERRA. 38 U.S.C. § 4303(2).

The trouble with Hoover's interpretation is that the Department of Labor (DOL)—tasked by Congress with implementing USERRA—has rejected it. *Id.* § 4331(a). Indeed, the DOL issued regulations interpreting § 4316(b)(1)(B) to mean that benefits are "not dependent on how the employer characterizes the employee's status during a period of [military] service." 20 C.F.R. § 1002.149. Moreover, when the DOL promulgated its final rules, it considered and rejected a comment suggesting that it make the form of leave (paid or unpaid) a factor in the leave comparison. 70 Fed. Reg. 75246, 75264 (Dec. 19, 2005) (stating that Congress found it "irrelevant whether the non-military leave is paid or unpaid").

Thus, it is evident—as even Hoover admits—that the DOL considers an employee's pay status during leave to have no legal significance under § 4316(b)(1)(B). The question, then, is whether we owe deference to the DOL's interpretation. To answer that question, we turn to the two-step process set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984).[3] At step one, we ask whether Congress spoke to the precise question at issue. *Id.* at 842–43. At step two, we ask whether the agency's interpretation of the statute is permissible. *Id.* Applying both steps, we conclude that the DOL's interpretation of § 4316(b)(1)(B) deserves deference.

---

[3] The DOL's interpretation is entitled to deference under *Chevron* because the regulations were promulgated using notice-and-comment procedures. *U.S. v. Mead Corp.*, 533 U.S. 218, 230–31 (2001); *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

1.    Step One: Congress did not speak to the meaning of
"status" and "pay"

We begin with *Chevron* step one, which asks whether Congress spoke to the precise question at issue. Congress speaks to the question at issue when it unambiguously expresses its intent through the statute. *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 986 (2005). We are bound to apply Congress's unambiguously expressed intent without regard to the agency's interpretation. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 462 (2002). But if a statute is genuinely ambiguous, we proceed to *Chevron* step two. *Autauga Cnty. Emergency Mgmt. Commc'n Dist. v. Fed. Commc'ns Comm'n*, 17 F.4th 88, 98 (11th Cir. 2021).

A statute is genuinely ambiguous when it is susceptible to more than one reasonable interpretation, even "after employing all the traditional tools of statutory construction." *Id.* (quotation omitted). We check for ambiguity by examining the statute's text, structure, and history, and by applying the canons of construction. *Hylton v. U.S. Att'y Gen.*, 992 F.3d 1154, 1158 (11th Cir. 2021); *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1223 (11th Cir. 2009). At step one, we may also consult the legislative history to decide whether Congress intended to speak to the precise question at issue. *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1273 (11th Cir. 2009); *Guar. Fin. Servs., Inc. v. Ryan*, 928 F.2d 994, 1004 (11th Cir. 1991).

In this case, the precise question at issue is whether the words "status" and "pay" in § 4316(b)(1)(B) unambiguously refer to

an employee's status and pay *during* the period of leave. We find that they do not because a reasonable person could read those words as references to an employee's general employment position and salary.

We begin with the text. Our job is to interpret a statute based on the ordinary meaning of its text at the time that the statute was enacted. *Wis. Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070 (2018). Dictionary definitions from the period of enactment often illuminate the ordinary usage of a statutory term. *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1759 (2018); *United States v. Dawson*, 64 F.4th 1227, 1236 (11th Cir. 2023). Here, Merriam-Webster's Collegiate Dictionary defines "status" as a "position or rank in relation to others." *See Status*, *Merriam-Webster's Ninth New Collegiate Dictionary*, at 1152 (9th ed. 1991). It defines the noun "pay" as something paid for a purpose, "especially as a salary or wage." *Id.* at 864. Both definitions suggest that "status" and "pay" refer to an employee's employment position and salary.

Of course, the meaning of a word can vary depending on context. Here, Congress referenced "status" and "pay" in a statute that grants military members the same rights and benefits provided "to *employees* having similar seniority, status, and pay *who are on . . . leave of absence.*" § 4316(b)(1)(B) (emphasis added). Hoover argues that the italicized language unambiguously confines the meanings of "status" and "pay" to the period of leave. We disagree.

A reasonable person could read the statute as imposing two limitations on the "employees" to whom we look for available

benefits. First, the statute narrows the scope of "employees" to those with particular attributes—those "having similar seniority, status, and pay." Then, the statute specifies that only a subset of these similarly situated employees are relevant for pinpointing the available benefits—those "who are on . . . leave of absence." This latter limitation does not confine "status" and "pay" to the period of leave. To the contrary, the word "who" is a relative pronoun introducing a dependent clause that modifies the noun "employee," not the nouns "status" and "pay." This limitation merely recognizes that an employee on military leave is not entitled to every benefit given to similarly situated employees, just those that are provided while the similarly situated employees are on leave. Accordingly, the language in § 4316(b)(1)(B) does not unambiguously limit the meaning of "status" and "pay" to the period of leave.

Our conclusion is bolstered by the fact that Hoover's interpretation would split the circuits. *Guar. Fin. Servs., Inc. v. Ryan*, 928 F.2d 994, 1003 n.3 (11th Cir. 1991) ("That the various courts that have already decided this question are split supports our conclusion that the statute is ambiguous."). To date, the Seventh and Third Circuits have held that compensation during leave is a "right or benefit" provided by § 4316(b)(1)(B). *Travers v. Fed. Express Corp.*, 8 F.4th 198, 204 (3d Cir. 2021); *White v. United Airlines, Inc.*, 987 F.3d 616, 621 (7th Cir. 2021). Because USERRA is designed to remedy differences in available "rights and benefits," we cannot use those differences to negate relief under section 4316(b)(1)(B). *Tully v. Dep't of Just.*, 481 F.3d 1367, 1370–71 (Fed. Cir. 2007) ("To allow differences in the available benefits to negate relief under section 4316(b)(1)(B)

would undermine the effect of the statute, which is designed to remedy differences in the benefits provided for military leave and leave for other purposes.").

But Hoover would have us do just that. The City seeks to contrast the Officers from other employees based on whether they received compensation while on leave. To differentiate on this basis, we would have to break from our sister circuits and hold that compensation during leave is not a right or benefit under the statute. While we need not decide that issue today, the implications of Hoover's interpretation serve as further proof that the statute is ambiguous. *Ryan*, 928 F.2d at 1003 n.3.

Finally, to the extent that Congress spoke to the meaning of "status" and "pay," USERRA's legislative history indicates that it did so in a way that defeats Hoover's interpretation. *Miccosukee Tribe of Indians*, 566 F.3d at 1274. Committee comments from the House of Representatives suggest that Congress did not intend to distinguish between various forms of non-military leave based on whether such leave was paid or unpaid:

> [T]o the extent the employer policy or practice varies among various types of non-military leaves of absence, the most favorable treatment accorded any particular leave would also be accorded the military leave, *regardless of whether the non-military leave is paid or unpaid*.

H.R. Rep. No. 103-65, pt. 1, at 33–34 (1993) (emphasis added). The DOL relied on this legislative history when it rejected a comment

that suggested making the form of leave (paid or unpaid) a relevant factor in the leave comparison, deeming it "irrelevant" in the eyes of Congress. 70 Fed. Reg. at 75264. Thus, to the extent Congress spoke to the meaning of "status" and "pay," the legislative history suggests that it did so in a way that defeats Hoover's interpretation.

For those reasons, the words "status" and "pay" in § 4316(b)(1)(B) are ambiguous at best. We now proceed to *Chevron* step two.

2.    Step Two: The DOL permissibly interpreted the terms "status" and "pay"

At step two, we readily conclude that the DOL's interpretation of "status" and "pay" is permissible. An agency's interpretation of a statute is permissible—deserving of deference—if it is reasonable in light of the statutory scheme. *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1256 (11th Cir. 2020) ("An interpretation is reasonable if it is rational and consistent with the statute."). The DOL concluded that an employee's entitlement to benefits under § 4316(b)(1)(B) "is not dependent on how the employer characterizes the employee's status during a period of service." 20 C.F.R. § 1002.149. This interpretation is reasonable in light of USERRA's statutory scheme.

The Supreme Court has long admonished courts to construe statutes protecting veterans liberally for the benefit of the veteran. *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946). Congress adopted this rule of construction when it enacted USERRA. *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 429 (9th Cir.

2023). Thus, when two plausible interpretations of USERRA exist—one denying benefits, the other protecting the veteran—we must choose the interpretation that protects the veteran. *Travers*, 8 F.4th at 208 n.25 ("[A]ny interpretive doubt is construed in favor of the service member, under the pro-veteran canon."). In this case, the word "status" could refer to an employee's job position, or to the way the employer classifies the employee while on leave. The DOL selected the former interpretation, which prevents employers from skirting USERRA's protections by mischaracterizing military leave. *Cf.* § 1002.149; 70 Fed. Reg. at 75263. This interpretation aligns with USERRA's purpose and scheme. Therefore, it is permissible.

Because we must defer to the DOL's interpretation of § 4316(b)(1)(B), we find that the words "status" and "pay" do not refer to an employee's pay status while on leave.[4] Instead, we interpret those words the way they are ordinarily understood in the employment context—as references to an employee's position and salary. Both parties proceed on the assumption that the Officers

---

[4] Hoover relies heavily on a California district court opinion to support its interpretation—*Elliott v. City of Anaheim*, No. 8:12-cv-736-CJC-MLG, 2015 WL 13918896 (C.D. Cal. July 21, 2015). But that case is not persuasive. The court in *Elliot* did not cite or consider the DOL regulation interpreting § 4316(b)(1)(B) as "not dependent on how the employer characterizes the employee's status during a period of service." 20 C.F.R. § 1002.149. Nor did the court engage with the text of § 4316(b)(1)(B). Moreover, *Elliott* came down before two different circuit courts held that compensation during leave is a benefit under USERRA. *Travers*, 8 F.4th at 203; *White*, 987 F.3d at 621. *Elliott* is not persuasive.

held a position and received a salary similar to employees who were placed on paid administrative leave. Our next step, then, is to determine whether paid administrative leave and military leave are comparable.

## B.    Military leave is comparable to paid administrative leave

Employees absent for military service are entitled to the most favorable treatment provided to non-military employees on any "comparable form of leave." 20 C.F.R. § 1002.150(b). Three factors inform our comparison between leaves: (1) the duration of the leave, (2) the purpose of the leave, and (3) the ability of employees to choose when to take the leave. § 1002.150(c). The district court found military leave comparable to paid administrative leave in terms of purpose and control, but "minimally comparable" in terms of duration. Despite this durational difference, the district court ultimately held that the leaves were comparable.

We agree with most aspects of the district court's thoughtful order. Starting with purpose, we find that military leave and paid administrative leave serve similar ends. For one, both enable Hoover to comply with the law. In its initial brief, Hoover acknowledged that it provides investigate administrative leave to comply with the Due Process Clause,[5] and at oral argument, it recognized that Alabama law compels it to provide paid leave for jury duty.

---

[5] The Due Process Clause does not always require notice and a hearing before an officer is suspended without pay. *Gilber v. Homar*, 520 U.S. 925, 932–33 (1997). Still, Hoover says that investigative administrative leave is its chosen method for providing due process.

Likewise, Hoover provides military leave to comply with USERRA. Moreover, both forms of leave are intended to shield employees from unnecessary hardship. According to Hoover's Human Resources Director, the City provides paid administrative leave during internal investigations to protect employees from hardship prior to a finding of wrongdoing. Similarly, USERRA aims to alleviate the employment-related hardships that stem from military service. 38 U.S.C. § 4301(a)(1). Military leave and paid administrative leave serve comparable purposes.

The two forms of leave are also similar in terms of control. This factor accounts for an employee's ability to choose when to take the leave. § 1002.150(c). Military employees do not control when they will be summoned for active-duty service, just as nonmilitary employees do not control when Hoover will launch an investigation and place them on administrative leave. Hence, employees taking military leave have a similar lack of control as those on investigative administrative leave.[6]

That leaves the final factor—duration. 20 C.F.R. § 1002.150(b). The district court analyzed this factor by grouping military leave and paid administrative leave into two categories based on length—short-term leave and long-term leave. In the short-

---

[6] Hoover argues that the leaves differ somewhat as to control because military employees can volunteer for military assignments. But nothing in the record suggests that such opportunities were available to the Officers. And even if the Officers had volunteered for certain military assignments, it is not clear that they could have chosen when to take leave to perform those assignments.

term-leave category, the court placed military leave for training and administrative leave for brief events like jury duty. It concluded that short-term military leave lasted three times longer (thirty-seven days) than short-term administrative leave (thirteen days). In the long-term-leave category, the district court placed military leave for deployment and investigative administrative leave. It found that both lasted, on average, sixteen months.

The district court ultimately concluded that military leave was not comparable in duration to paid administrative leave because the three-to-one difference between short-term military leave and short-term administrative leave was significant. In reaching this decision, the district court disregarded the similarity between military leave for deployment and investigative administrative leave, labeling the long-term leaves "outliers." We see things differently.

We do not view the instances of investigative administrative leave as outliers. Instead, they set the upper strata of paid administrative leave that Hoover was willing to provide its employees. *See Clarkson*, 59 F.4th at 435–36 (considering as relevant evidence a comparison between the longest instance of military leave and the longest instance of non-military leave). These instances demonstrate that Hoover was inclined to provide paid administrative leave for up to around sixteen months—the same average length as the longest instances of military leave.[7] Had the Officers been placed

---

[7] The district court did not consider Officer Fountain's military leave when calculating the average length of deployment. Fountain was ordered to active-

on paid administrative leave instead of military leave, they would have received holiday pay and accrued benefits for each period of service, including those shorter than sixteen months. So, the district court should have found the two forms of leave comparable in duration.[8] *See Tully*, 481 F.3d at 1369–70 (stating that the duration inquiry reflects an equality principle that entitles veterans to the same benefits they would have earned had they not left for military service, but for some other reason). Nevertheless, the district court ultimately held that the leaves were comparable, and it granted summary judgment to the Officers. Because the district court reached the correct conclusion, we affirm.

## IV.    CONCLUSION

---

duty service for one year starting in 2007, which the military extended annually until 2011, totaling 1,752 days. The district court was unsure whether to regard this leave as a single period, or multiple one-year periods. Because Fountain was absent for active-duty service in the United States military for a continuous, uninterrupted period of service, we conclude that his leave is best viewed as a single period. Nevertheless, even if we added Officer Fountain's abnormal, one-off absence into the mix of military leaves, the longest instances of military leave (on average, twenty-one months) would still be similar to the longest average instances of investigative administrative leave (sixteen months).

[8] Beyond the three enumerated factors in section 1002.150(c)—duration, purpose, and control—Hoover cites other unenumerated factors to support its position. But because the three enumerated factors favor the Officers, the unenumerated factors do not change the outcome. *Clarkson*, 59 F.4th at 436 ("[T]he factors enumerated in the regulation should be weighed most heavily when considering whether two leaves are comparable.").

Hoover violated § 4316(b)(1)(B) by not providing the Officers the same benefits on military leave that it afforded similar employees on paid administrative leave. We affirm the district court's order granting the Officers' motion for summary judgment.

**AFFIRMED.**